UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUSTIN JAMIE CORONA PARRA, | Case No. 1:17-cv-01274-AWI-JDP (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR HABEAS CORPUS |
| v. | ECF No. 1 |
| R. NDOH, | |
| Respondent. | |

Petitioner Augustin Jamie Corona Parra, a state prisoner proceeding without counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. For the following reasons, we recommend denying the petition.

**Background**

Petitioner, represented by counsel, pled no contest to one count of making criminal threats and one count of willful infliction of corporal injury, with enhancements for using a deadly or dangerous weapon and inflicting great bodily injury, and two enhancements for prior felony convictions. CT 86-88. Petitioner's negotiated sentence for his plea was thirteen years and eight months. *Id.* After he failed to appear at his sentencing, petitioner sought to withdraw his plea and his counsel withdrew. CT 92, 94, 102-108. The trial court held a hearing on the motion, denied petitioner's motion, and then sentenced him accordingly. CT 134-39, 144-45.

We set forth below the facts of the underlying offense and circumstances surrounding petitioner's motion to withdraw, as stated by the California Court of Appeal, Fifth District. A presumption of correctness applies to these facts. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

> On July 17, 2014, appellant was arrested for attacking his fiancée, Ms. Gabriela Ruiz. According to a report filed by the Kern County Sheriff's Department, after Ms. Ruiz received a telephone call, appellant accused Ms. Ruiz of cheating on him and assaulted her. In the course of the assault, appellant attacked Ms. Ruiz with a kitchen knife, cutting her right thigh. Appellant also strangled Ms. Ruiz while apologizing for the belief that he would have to murder her. When Ms. Ruiz was able to escape appellant's attack and call for help, appellant fled.
> Appellant was ultimately charged with assault with a deadly weapon (§ 245, subd. (a)(1)), making criminal threats, willful infliction of corporal injury, and attempted murder (§§ 187, 664), with each count carrying multiple enhancements. These charges carried a minimum potential sentence of 29 years. In addition, appellant faced an alleged parole violation based on the same conduct. Appellant retained Jessie Whitten as counsel to represent him.
> On October 8, appellant pleaded no contest to counts 2 and 3, and admitted his pending parole violation. In exchange, appellant was promised a 13-year sentence on counts 2 and 3, a consecutive 8-month sentence on the parole violation, and dismissal of all remaining charges. The trial court engaged in a plea colloquy for both the charges in this case and the related probation violation. When the trial court recounted the plea agreement and asked appellant if the agreement was correctly stated and in line with his understanding, appellant responded "Yes, ma'am." When asked if he understood that the great bodily injury allegation meant he would be required to serve 85 percent of his sentence, appellant responded "Yes, your Honor." Appellant further confirmed he had reviewed with his attorney the rights identified in the written "Waiver of Rights" form he had signed, stated he understood those rights "Perfectly," and, when asked if he had any questions, sought to confirm that his guilty plea would also resolve his probation violation. The trial court accepted appellant's plea and, after a discussion with appellant, sent him to "the fifth floor" to conduct an interview with the probation department.
> The subsequent probation officer's report contained a personal history "obtained from the defendant" which included a notation on alcohol and drug use stating appellant "denied any prior use of alcohol and/or illegal narcotics." With respect to appellant's self-reporting on his health and disabilities, appellant "indicated he is currently taking medication for anxiety and ADHD." Appellant denied culpability for the crimes he had pleaded no contest to and declined to provide a written or verbal statement on them.
> Appellant failed to appear for his initial sentencing hearing on December 3. After appellant had been detained on a no-bail warrant, Mr. Whitten informed the court that appellant wished to withdraw his plea and, due to that request, Mr. Whitten needed to withdraw from the representation. Appellant was assigned a public defender and filed a motion to withdraw his plea.
> The trial court held a hearing to take evidence on appellant's motion. At that hearing, appellant testified he had been taking Adderall and Xanax since early 2010. Having no insurance, appellant paid for his prescriptions in cash and sometimes found himself without adequate funds to purchase his medicine, leading him to abruptly stop using them. Appellant claimed one of these medication

stoppages occurred around the time he pleaded nolo contendere. Appellant further claimed Mr. Whitten was fully aware of his medical issues, but took no action to investigate their potential effect on the charges against him.

Appellant explained that he filled a prescription for 60 Xanax pills on September 17, with orders to take two per day. According to appellant, he began taking an additional pill each day around September 23 due to the stress of his legal proceedings, and ran out of medication by October 5. This lack of medicine caused appellant to be irrational and confused at his plea hearing on October 8, such that he claimed to be having auditory hallucinations during the hearing and was unable to recall the proceedings or the following probation interview with any real specificity.

On October 11, appellant allegedly suffered a seizure which was witnessed by Ms. Ruiz. He went to the hospital the next day and was given additional Xanax medication. The parties stipulated that the abrupt stoppage of Xanax can lead to an increased potential for seizures and that Adderall lowers a person's threshold for seizures.

Ms. Ruiz testified on appellant's behalf. Ms. Ruiz asserted she had spoken to Mr. Whitten multiple times about appellant's mental issues, which she described as "a lot of depression." These discussions had occurred in both April, as a result of a separate incident where appellant allegedly attacked Ms. Ruiz, and July, following the current attack. Ms. Ruiz claimed she told Mr. Whitten that appellant attacked her because he was off of his medications. However, she later admitted that appellant was also drunk when he attacked her.

Mr. Whitten also testified. A lawyer with ten years of criminal defense experience, Mr. Whitten explained he had spent several hours discussing the present case with appellant. Mr. Whitten had also represented appellant in a prior matter from around April 2014 during which he spent another four hours or so discussing legal issues with appellant. Mr. Whitten testified that appellant never mentioned mental health issues in those discussions, instead blaming all of his issues on drinking, and that appellant fully denied all of the charges. Mr. Whitten further testified that he had spoken to Ms. Ruiz a couple of times, but that she had not mentioned mental health as an issue, other than a general reference to emotional problems. Mr. Whitten confirmed, however, that he had seen, prior to the plea agreement, at least one notation in a police report indicating Ms. Ruiz had told the police about appellant's use of medication.

At no point during any of his discussions with appellant, including the time they spent discussing the present plea, did Mr. Whitten feel appellant was mentally unstable or incapable of understanding the proceedings. At most, Mr. Whitten thought appellant was slightly agitated, which he attributed to appellant being in the stressful position of having to decide whether or not to accept the offered plea deal. Mr. Whitten admitted that, based on his observations and discussions, he did not review appellant's medical history, did not discuss the possibility of a not guilty by reason of insanity plea, did not consider retaining a psychologist or psychiatrist, did not refer appellant to a mental health professional, and never had a reason to believe appellant's sanity was an issue.

Following the testimony and argument, the trial court denied appellant's motion to withdraw his plea. Relying on the court's own impressions of its colloquy with appellant, which the court described as "a lucid conversation regarding what was happening" where appellant "clearly understood what he was doing," the court found no indication that appellant's "stoppage of his medications, if that actually occurred, led to any confusion on the date he entered the plea." While the court concluded appellant did suffer a seizure on October 11, it found this incident "did not affect what he did on October 8." The court then further found that nothing in the record indicated Mr. Whitten should have investigated a

3

not guilty by reason of insanity defense and concluded Mr. Whitten had done "a thorough and competent job in representing" appellant.

*People v. Parra*, 2016 Cal. App. Unpub. LEXIS 5857, at *1-8 (Aug. 10, 2016).

**Discussion**

Here, petitioner raises four habeas claims: (1) trial court erred by denying his motion to withdraw his plea; (2) ineffective assistance of trial counsel; (3) ineffective assistance of appellate counsel; and (4) appellate court erred by refusing to permit supplemental pro se briefing. ECF No. 1 at 5-6. The Court of Appeal rejected the first two claims on the merits in a reasoned opinion. Petitioner raised the third and fourth claims on appeal. The California Supreme Court summarily denied review on all four claims. Petitioner raised all four claims in his state habeas petition that was denied by the Court of Appeal and California Supreme Court.

*Legal Standard*

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition. *See* 28 U.S.C. § 2254; *Harrington v. Richter*, 562 U.S. 86, 97 (2011). To decide a § 2254 petition, a federal court examines the decision of the last state court that issued a reasoned opinion on petitioner's habeas claims. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court reviews the state court's decision under the deferential standard of § 2254(d). Section 2254(d) precludes a federal court from granting habeas relief unless a state court's decision is (1) contrary to clearly established federal law, (2) a result of an unreasonable application of such law, or (3) based on an unreasonable determination of facts. *See* § 2254(d); *Murray v. Schriro*, 882 F.3d 778, 801 (9th Cir. 2018). A state court's decision is contrary to clearly established federal law if it reaches a conclusion "opposite to" a holding of the United States Supreme Court or a conclusion that differs from the Supreme Court's precedent on "materially indistinguishable facts." *Soto v. Ryan*, 760 F.3d 947, 957 (9th Cir. 2014) (citation omitted). The state court's

4

decision unreasonably applies clearly established federal law when the decision has "no reasonable basis." *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011). An unreasonable determination of facts occurs when a federal court is "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Loher v. Thomas*, 825 F.3d 1103, 1112 (9th Cir. 2016). A federal habeas court has an obligation to consider arguments or theories that "could have supported a state court's decision." *See Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2557 (2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). One rule applies to all state prisoners' petitions adjudicated on the merits: the petitioner must show that the state court's decision is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Even when a state court does not explicitly address a petitioner's claims on the merits, a § 2254 petitioner must satisfy a demanding standard to obtain habeas relief. When a state court gives no reason for denying a petitioner's habeas claim, a rebuttable presumption arises that the state court adjudicated the claim on the merits under § 2254(d). *See Richter*, 562 U.S. at 99. And a federal habeas court's obligation to consider arguments or theories that could support a state court's decision extends to state-court decisions that offer no reasoning at all. *See Sexton*, 138 S. Ct. at 2557.

If obtaining habeas relief under § 2254 is difficult, "that is because it was meant to be." *Richter*, 562 U.S. at 102. As the Supreme Court has put it, federal habeas review "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id.* at 103 (citation omitted). Our habeas review authority serves as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (emphasis added).

As petitioner has entered a plea, his habeas review is limited in scope. Generally, a petitioner may not collaterally attack alleged pre-plea constitutional violations if he enters a voluntary and intelligent guilty plea. *See Tollett v. Henderson*, 411 U.S. 258, 265-67 (1973);

5

*Journigan v. Duffy*, 552 F.2d 283, 287 (9th Cir. 1977).  A petitioner may challenge the voluntary and intelligent character of the guilty plea or counsel's ineffectiveness in advising the petitioner to enter a plea.  *See Tollett*, 411 U.S. at 267; *Journigan*, 552 F.2d at 287 n.6.  In addition, a guilty plea will not bar the petitioner from raising claims that challenge the state's power to bring the petitioner into court or that are entirely independent of the question of factual guilt.  *See, e.g.*, *Menna v. New York*, 423 U.S. 61, 62 (1975) (per curiam) (raising double jeopardy claim on direct appeal); *Blackledge v. Perry*, 417 U.S. 21, 30-31 (1974) (raising claim of vindictive prosecution); *Journigan*, 552 F.2d at 288-89 (challenging an allegedly unconstitutional statute).

### *Plea Withdrawal*

Plaintiff's first ground for relief is that the trial court erred by denying his motion to withdraw his no contest plea.  Due process requires a guilty plea to be voluntarily and intelligently made, with sufficient awareness of the relevant circumstances and likely consequences of the waiver of certain fundamental constitutional rights.  *See Parke v. Raley*, 506 U.S. 20, 29 (1992).  A petitioner seeking to repudiate his representations at a plea hearing faces a heavy burden.  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the [petitioner], his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.").

The record contains abundant evidence that petitioner made his no contest plea voluntarily and intelligently, with an understanding of the consequences.  The trial court engaged in a substantial colloquy with petitioner to establish that the plea was voluntary and intelligent.  CT 116-24; RT 2-9.  The trial court conducted a hearing on petitioner's motion to withdraw and heard testimony from multiple witnesses before denying the motion in a reasoned opinion.  RT 14-96.  The Court of Appeal reasonably found that petitioner's no contest plea was knowingly and intelligently made because the record supported the trial court's conclusion that appellant was not suffering from withdrawal symptoms when he entered the plea.  *Parra*, 2016 Cal. App. Unpub. LEXIS 5857, at *10-11.

Accordingly, the state court's rejection of the claims in ground one was not contrary to or an unreasonable application of clearly established federal law as set forth by the United States Supreme Court and did not rest on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d). Ground one does not warrant federal habeas relief.

*Ineffective Assistance of Counsel*

Petitioner contends in ground two that he received ineffective assistance of trial counsel when he entered his plea because his counsel had failed to investigate the potential of an insanity defense. Petitioner contends in ground three that he received ineffective assistance of appellate counsel because counsel refused to file a supplemental pro se brief prepared by petitioner.

A doubly deferential standard governs a federal habeas petitioner's claim of ineffective assistance of counsel. On direct appeal, the two-step inquiry from *Strickland v. Washington* guides the analysis for an ineffective-assistance-of-counsel claim. *See* 466 U.S. 668, 687 (1984). First, a criminal defendant must show some deficiency in performance by counsel that is "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* Second, the defendant must show that the deficient performance caused him prejudice; this requires him to show "that counsel's errors were so serious as to deprive [the petitioner] of a fair trial." *Id.* On habeas review, coupled with Section 2254(d)'s fairminded-jurist standard, the *Strickland* requirements become even more deferential: The question is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105 (emphasis added). That is, if there is even one reasonable argument that counsel did not violate the *Strickland* standard—even if the state court has not identified the argument—then the petitioner cannot obtain habeas relief. *See id.* at 106.

Here, petitioner has failed to satisfy the daunting *Strickland* requirements on habeas review. Neither of the two alleged errors—failure to investigate an insanity defense and refusal to file a supplemental brief on appeal—satisfies the first prong of *Strickland*, deficient performance. As the Court of Appeal explained, "there was nothing in the record to indicate the need to investigate an insanity defense." *Parra*, 2016 Cal. App. Unpub. LEXIS 5857, at *13. Thus, trial counsel's non-investigation of such a defense was not deficient performance.

7

Petitioner's appellate counsel refused to file petitioner's supplemental brief because petitioner was attempting to introduce new evidence on appeal, which is not permitted. ECF No. 1 at 86. Appellate counsel's performance was not deficient for failing to file a brief that would only have served to waste the court's time and not have any impact on petitioner's conviction or sentence. Thus, grounds two and three do not warrant federal habeas relief.

### *State policy against represented parties filing briefs in pro per*

Petitioner's fourth ground for relief challenges the California courts' policy of denying represented appellants in criminal cases the opportunity to file briefs in pro per in addition to briefs filed by their counsel. Petitioner may feel that this policy is wrong, but such a policy objection is not cognizable in a habeas context. Clearly established federal law holds that there is no federal "constitutional right to self-representation on direct appeal from a criminal conviction." *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 163 (2000). Thus, petitioner's fourth ground does not warrant habeas relief.

**Certificate of Appealability**

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, petitioner has not made a substantial showing of the denial of a constitutional right. Thus, we recommend that the court decline to issue a certificate of appealability.

**Findings and Recommendations**

The court should deny the petition for a writ of habeas corpus, ECF No. 1, and decline to issue a certificate of appealability. These findings and recommendations are submitted to the U.S. District Court judge presiding over this case under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty days of the service of the findings and recommendations, the parties may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document must be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated:  April 20, 2020

UNITED STATES MAGISTRATE JUDGE

No. 204.